UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| LORAINE WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | Civil No. 12-131-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| ALTMAN, MCGUIRE, MCCLELLAN & ) | **AND ORDER** |
| CRUM, P.S.C., et al., ) | |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The rule requiring complete diversity among parties under 28 U.S.C. § 1332 is not absolute. State-court defendants may remove a non-diverse case to federal court if they can establish that the plaintiff fraudulently joined the non-diverse defendants. Here, the defendants fail to show that the plaintiff has no colorable state-law claim against the non-diverse defendants. The Court must therefore remand the case to state court.

## BACKGROUND

On July 3, 2007, Loraine Williams had surgery to repair her pelvic organ prolapse. R. 1-1 at 4 ¶¶ 1, 2. A pelvic prolapse occurs when the supporting tissues in the female reproductive organs weaken. The uterus, the vaginal walls, or both will then press down on (or even fall out of) the vaginal opening. *See* Michael R. Lund & Julianne R. Newcomer, *Pelvic Organ Prolapse*, Encyclopedia of Aging and Public Health 639 (Sana Loue, Martha Sajatovic, eds. 2008). Williams's doctor, Rick McClellan, implanted a plastic-mesh netting in Williams's pelvis to strengthen her pelvic wall and thus fix the prolapse. *See* R. 1-1 at 4 ¶ 2. The particular mesh implant he used was a Gynecare TVT Secur TVTS. *Id.* at 8 ¶ 15.

After her surgery, Williams "suffered pain and discomfort." *Id.* at 8 ¶ 16. She did not learn that her implant was the likely source of her maladies, however, until a visit to Dr. McClellan on October 4, 2011. *Id.* at 37−38 ¶ 118. During that visit, he informed her that her symptoms were likely caused by her 2007 surgery. *Id.* She then underwent a second surgery with Dr. McClellan on December 9, 2011. *Id.* at 8 ¶ 16. This time, he used a different implant, an Ethicon TVT obturator. *Id.*

On March 19, 2012, Williams filed suit in Pike Circuit Court. R. 1 at 2. Her original complaint named only two defendants: (1) Dr. McClellan; and (2) his medical practice group, Altman, McGuire, McClellan & Crum, P.S.C. R. 1-1 at 69. The complaint did not list any specific causes of action against either defendant. Instead, it claimed that the defendants had refused to comply with Williams's requests for her medical records. *Id.* at 70 ¶¶ 5−6. The complaint sought an order compelling production of those documents and tolling the statute of limitations for any claims those records might reveal. *Id.* at 71.

After receiving those documents, Williams filed an amended complaint on October 4, 2012. *Id.* at 3. The complaint added three new defendants: Johnson & Johnson; Ethicon, Inc.; and Ethicon, LLC. *Id.* Johnson & Johnson owns both Ethicon companies, *id.* at 6 ¶ 10, and Ethicon produced the pelvic implants placed in Williams, *id.* at 10 ¶¶ 23−24. Williams asserted seven causes of action against only the new defendants: (1) negligence; (2) strict-liability design defect; (3) strict-liability failure to warn; (4) strict liability defective manufacture; (5) common-law fraud; (6) fraudulent concealment; and (7) negligent misrepresentation. *Id.* at 39−59 at ¶¶ 127−89. She also sought punitive damages. *Id.* at 59−63 ¶¶ 190−205. The gravamen of these seven claims was that the manufacturers

intentionally withheld information about the dangers of their mesh implants. *See, e.g.*, *id.* at 17 ¶ 43. Conversely, Williams brought just one cause of action against Dr. McClellan and his practice group: medical negligence. *Id.* at 63−66 ¶¶ 206−19. She asserted that the doctors: failed to warn her of the publically known dangers of such mesh implants, failed to inform her of the dangers of mesh implants before October 2011, performed her surgeries without adequate training in the use of mesh implants or the general techniques used to insert them, and ignored safer alternative methods. *Id.* Williams also named the manufacturer defendants in the medical negligence count, *see id.* at 63, but did not explain how they contributed to the doctors' negligence.

The defendant manufacturers removed the case to federal court on November 9, 2012. R. 1. One month later, Williams filed a motion to remand. R. 15. Mindful that this case may be transferred into a multi-district litigation case involving Ethicon, the Court ordered an expedited briefing schedule. R. 21.

## DISCUSSION

### I. Fraudulent Joinder

Dr. McClellan and his practice group are citizens of Kentucky, just like Williams. Normally this would prevent the defendants from removing this case based on diversity jurisdiction. *See* 28 U.S.C. § 1332. But the defendants argue that the complete diversity rule does not apply here because Williams sued McClellan and his practice group to prevent removal to federal court. *See* R. 1 at 5 ¶ 16. Thus, they conclude, the Court should find diversity jurisdiction for this case under the doctrine of fraudulent joinder. *See id.* at 3 ¶ 6.

To invoke this judicially created exception, the removing defendants must produce "sufficient evidence" that Williams cannot establish a cause of action under Kentucky law against either Kentucky defendant. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). This is a more substantial burden than the defendants would face if they had brought a motion to dismiss under Rule 12(b)(6). *See Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). They must show that there is no "colorable basis" to predict that Williams "may recover" against one of the Kentucky defendants. *Id.* (quoting *Coyne*, 183 F.3d at 493). In reviewing their allegation of fraudulent joinder and the motion to remand, the Court may "pierce the pleading" and consider evidence that is normally reserved for summary judgment, such as affidavits. *Id.* (citing *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 952–54 (6th Cir. 2011)). The Court may do so, however, only for the limited purpose of identifying "undisputed facts that negate the claim." *Id.* (quoting *Walker*, 443 F. App'x at 955−56).

The defendants present two theories as to why Williams has no tenable claim against McClellan or his practice. Neither establishes that Williams's claim "is so frivolous that it has no hope of success." *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 594 (E.D. Ky. 2011) (citing *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009)).

### A. The Plaintiff's Conflicting Allegations

Williams claims that the manufacturers suppressed information about the dangers of their implants *and* that Dr. McClellan should have known to warn her of the dangers of the

implants. Plaintiffs are normally free to bring inconsistent claims such as these. Fed. R. Civ. P. 8(d)(3); *see also* Ky. R. Civ. P. 8.05(2) (allowing same inconsistent pleading approach in Kentucky courts). The defendants claim that this inconsistency is impermissible because there is no factual basis for Williams's allegations against the Kentucky defendants. Under their theory, inconsistent factual allegations are permitted only if there is some basis for both claims. *See* R. 1 at 10 ¶ 27.

As an initial matter, much of the defendants' criticism of Williams's complaint is misplaced. She filed her complaint in Pike Circuit Court, R. 1-1 at 69, and Kentucky courts do not hold complaints to the standard that federal courts do under Federal Rule of Civil Procedure 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation omitted)). Kentucky still follows the old notice-pleading regime. So Kentucky courts may dismiss plaintiffs' complaints only where they "would not be entitled to relief under any set of facts which could be proved" under the complaint. *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (quotation omitted). Faulting Williams for failing to meet an inapplicable, stricter pleading standard does not affect whether she has laid out a colorable basis for recovery. *See Coyne v. Am. Tobacco Co.*, 183 F.3d at 493.

Williams asserts several colorable claims against the Kentucky defendants. For example, she alleges that Dr. McClellan was not properly trained in the general surgical techniques used to implant mesh devices, such as the use of trocars. R. 1-1 at 64 ¶ 215. And she further alleges that his lack of training contributed to or caused her injury. *See id.* at

65−66 ¶¶ 216, 218−19.  Perhaps Williams's allegations are not as artfully pleaded as the defendants would like.  *See* R. 23-1 at 5−6.  But their criticisms of her complaint implicitly rely on the standard set out in *Iqbal* for reviewing a complaint on a motion to dismiss.  The Court must apply a "more lenient" standard to the complaint when considering a motion to remand and allegations of fraudulent joinder.  *Casias*, 695 F.3d at 433 (citing *Walker*, 443 F. App'x at 955–56)); *see also Fox*, 317 S.W.3d at 7 (providing that "the pleadings should be liberally construed in the light most favorable to the plaintiff" (internal quotation marks omitted)).  Under that standard, Williams's complaint certainly makes out a colorable state-law basis for recovery.  *See, e.g.*, *Hyman & Armstrong, P.S.C. v. Gunderson*, 279 S.W.3d 93, 113 (Ky. 2008) (requiring doctors to "use the degree of care and skill expected of a competent practitioner of the same class and under similar circumstances").  Also, Williams alleges that Dr. McClellan failed to proactively inform his patients of the potential complications from mesh implants in the years following her surgery.  *See* R. 1-1 at 64−65 ¶¶ 212, 217.  That information was available to practicing physicians well before Dr. McClellan's October 2011 appointment with Williams.  *See, e.g.*, *id.* at 18−19 ¶¶ 46−47 (FDA reports from 2008 and July, 2011).  Thus, McClellan's alleged negligence—insofar as he failed to alert Williams of the potential complications earlier and thus speed her recovery—could make him partially liable for her pain and suffering.  *See Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682, 687 (Ky. 2003) (holding that physicians have a duty to disclose their findings and inform their patients

6

(quoting *Mitchell v. Hadl*, 816 S.W.2d 183, 185 (Ky. 1991)).  Williams thus has at least two colorable claims against the Kentucky defendants under state law.

The defendants cite a host of cases in which district courts have refused to remand complaints with logically inconsistent claims against medical manufacturers and doctors. *See* R. 25 at 5−8.  Putting aside whether these cases were correctly decided, their rationale does not apply to Williams's complaint.  Twelve of these thirteen cases involved prescription drugs—not surgically implanted medical devices.[1]  *See, e.g.*, *Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 761−63 (S.D. W. Va. 2003) (finding fraudulent joinder where plaintiff alleged that drug company withheld information about prescription drug while also claiming doctor should have known about the drug's harmful effects).  Those decisions rested on two factors: (1) the plaintiffs' allegations against the defendant doctors were wholly conclusory; and (2) it was logically impossible for a drug company to hide information while a practicing doctor simultaneously has access to that information.  *See id.* at 762−63.  In the case of prescription drugs, the question for liability is what information was known to which parties at the time the plaintiff took the medication.  *See id.*; *In re Baycol Products Litig.*, No. 03-cv-4954-MJD, 2004 WL 1118642, at *2 (D. Minn. May 17, 2004) (holding that plaintiffs' allegation that Bayer failed to warn physicians of a drug's dangers "discredits" the plaintiffs' allegation that their doctors failed to warn them of those same dangers).  The only issue is whether it was the doctor or the manufacturer who withheld information about the drug's risks.  But with the

---

[1] The thirteenth case involved an unmopped floor in Walmart.  *See McConnell v. Funk*, No. 2:10-cv-97KS-MTP, 2010 WL 4736257, at *1 (S.D. Miss. Nov. 16, 2010) (plaintiff sued Walmart and the store manager after "she slipped and fell on a substance she believed to be beans and water").  This case relied solely on the "[c]onclusory or generic" nature of the plaintiff's allegations against the non-diverse defendant.  *Id.* at *2.  As explained previously, Williams's allegations are not so conclusory or generic as to deprive her claims of a colorable basis under Kentucky law.

surgical implantation of a permanent medical device into a patient's body, there are factors independent of the initial information about the device's risks that may contribute to the patient's injuries. For example, Dr. McClellan's negligent insertion of the implant could have compounded the injury that the mesh implant's defect inflicted. Similarly, his failure to alert Williams about the implants' dangers after they became known in the medical community may have contributed to her unnecessarily her long pain and suffering. *See* R. 1-1 at 16 ¶ 46 (citing 2008 FDA publications on the dangers of pelvic mesh implants). Given that Kentucky is a pure comparative negligence state, *see* Ky. Rev. Stat. Ann. § 411.182, it is certainly possible that Williams could simultaneously collect against both the Kentucky defendants and the manufacturers.

The question is not what likelihood of success Williams has on her medical negligence claim. Rather, the question is whether she has "at least a colorable cause of action" against the Kentucky defendants. *See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). She clearly does. Thus, the defendants' conflicting allegations theory fails.

     B.     **The Statute of Limitations**

Williams had her first surgical procedure in July of 2007. R. 1-1 at 4 ¶ 1. Yet she did not file suit against Dr. McClellan and his practice until March of 2012. R. 1 at 2 ¶ 1. Kentucky requires a plaintiff to file her malpractice suit against a physician within one year of the time she either discovered the injury or should have discovered it. Ky. Rev. Stat. Ann. § 413.140(1)(e), (2). "Injury" is a term of art under Kentucky law. To discover that she has

suffered an "injury," a plaintiff must know two things: (1) that she has been wronged; and (2) the identity of the person who wronged her. *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000). The defendants assert that, given Kentucky law's duty to exercise reasonable diligence, Williams should have known about the alleged malpractice well before 2011. *See* R. 25 at 10−15; *see also Louisville Trust Co. v. Johns–Manville Prods.*, 580 S.W.2d 497, 501 (Ky. 1979) (citation omitted) (describing the reasonable diligence requirement). They may ultimately be correct, but that is not for this Court to say at this juncture.[2]

The defendants face a steeper challenge here than they did on their conflicting allegations theory above. While Williams has the burden of alleging a sufficient cause of action, the statute of limitations is an affirmative defense that the defendants must prove themselves. *See* Ky. R. Civ. P. 8.03; *Lynn Mining Co. v. Kelly*, 394 S.W.2d 755, 759 (Ky. 1965) (citations omitted). So the defendants must come forward with affirmative evidence establishing that the complaint is untimely. They initially try to meet their burden by turning Williams's complaint against her, quoting her allegation that: "[a]fter her July 3, 2007 surgery, . . . [she] suffered pain and discomfort." R. 25 at 11 (alterations in original (quoting R. 1-1 at 8 ¶ 16)). But the ambiguous term "after" does not establish when Williams's pelvic pain started. *See Tomlinson v. Siehl*, 459 S.W.2d 166, 167 (Ky. 1970) (holding that a defendant can only use the complaint to establish a statute of limitations violation if the face

---

[2] Though several other circuits have held that defendants may establish fraudulent joinder by raising the affirmative defense of an expired statute of limitations, the Sixth Circuit has yet to rule on the issue. *See, e.g.*, *Parkway Imaging Ctr., Inc. v. Home Life Fin. Assur. Corp.*, 198 F.3d 240 (5th Cir. 1999); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319–20 (9th Cir. 1998); *LeBlang Motors, Ltd. v. Subaru of America, Inc.*, 148 F.3d 680, 690–92 (7th Cir. 1998). Since the defendants have failed to carry their burden of establishing the affirmative defense, the Court need not resolve the issue of whether it is even proper to consider an affirmative defense at this stage of the proceedings.

of the complaint itself shows that the claim was definitely untimely); *see also Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (applying same principle for attempts to raise a statute of limitations defense on a 12(b)(6) motion). The defendants' argument would require the Court to construe the terms of Williams's complaint against her, and the standard forbids that. *See Casias*, 695 F.3d at 433.

Moreover, when Williams's pain and suffering began is not dispositive. What matters is when she should have realized that she had been wronged. *See Wiseman*, 37 S.W.3d at 712. Under Kentucky law that is a question of fact for the jury. *Elam v. Menzies*, 594 F.3d 463, 467 (6th Cir. 2010) (quoting *Kelly*, 394 S.W.2d at 759). And the defendants offer no evidence that would prevent a reasonable jury from accepting Williams's claim that she had no reason to suspect medical malpractice until her appointment on October 4, 2011. R. 1-1 at 37−38, ¶ 118, 65 ¶ 217; *see also Casias*, 695 F.3d at 433 (holding that a district court may pierce the pleading only for evidence that establishes "undisputed facts that negate the claim" (quoting *Walker*, 443 F. App'x at 955–56)). The defendants point to the fact that she experienced pelvic pain before her October 2011 appointment, R. 25 at 10−11, and that the FDA issued Public Health Notifications, *id.* at 12−13. But those facts do not definitively establish that Williams should have known she was the victim of malpractice. She has no medical expertise. So a jury could find it reasonable for Williams not to realize that the symptoms she experienced were the result of medical malpractice. *See, e.g.*, *Harrison v. Valentini,* 184 S.W.3d 521, 524 (Ky. 2005) (explaining that patients' lack of medical expertise means they may reasonably believe that an "undesirable outcome is simply an unfortunate result of proficient medical care"). Also, the medical documentation that she

provides—the strongest evidence in the record of what information she was exposed to—does not indicate that she should have discovered her injury prior to the October 2011 appointment. *See* R. 15-4; R. 15-5; R. 15-6; R. 15-7; R. 15-8 (describing Williams as "doing well" despite some post-surgical pain). Judging this evidence and drawing factual inferences based on the weighing of that evidence is for a jury, not a judge. *See Elam*, 594 F.3d at 467, 470.

The defendants' arguments also suffer from a more fundamental flaw. They have no actual evidence proving that Williams knew or should have known about the malpractice before October of 2011. The arguments are merely inferences drawn from other facts in the record. *See* R. 25 at 10−13. But at this stage, all inferences must be drawn in favor of Williams. *See Casias*, 695 F.3d at 433 (holding that the fraudulent joinder standard is "more lenient" on the nonmoving party than the 12(b)(6) standard (citing *Walker*, 443 F. App'x at 955−56)). Thus, the defendants' statute of limitations theory fails as well.

## II.     Fraudulent Misjoinder

Federal courts have recently invented an analog to the doctrine of fraudulent joinder, fraudulent misjoinder. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). This doctrine applies to cases where the plaintiff's claims are meritorious, but she has improperly joined a non-diverse defendant with a diverse defendant in order to prevent removal to federal court. Consider the following example: Amber, a citizen of Alabama, purchases a single-engine airplane from Pete's Planes, a Georgia corporation. She then stores her new plane at Fran's Flights, a private airstrip in Alabama. The next week, while

11

walking through the hangar for her first flight in her new plane, Amber slips and falls in a puddle of motor oil left by one of Fran's employees, injuring her back. To add to her misery, Amber finds that the plane she bought is a lemon and will not even start. She brings a suit against both Pete's Planes and Fran's Flights in Alabama state court, seeking more than $75,000 from both defendants. Pete's Planes could remove the case to federal court under the doctrine of fraudulent misjoinder by proving that Amber's injury at the airfield was completely unrelated to any defects in her plane. The district court would then sever Amber's claims against Fran's Flights and remand them to state court. *See generally* E. Farish Percy, *Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine*, 29 Harv. J.L. & Pub. Pol'y 569, 582−88 (2006).

      The Sixth Circuit has yet to adopt this rule, and until that day comes this Court will not recognize it. *See Murriel-Don Coal Co.*, 790 F. Supp. 2d at 599−600. Even if this Court were to reverse course and adopt the doctrine, it would make no difference here. The doctrine applies only to "egregious" misjoinder. *Tapscott*, 77 F.3d at 1360. Williams alleges that she was injured by a mesh implant that the Kentucky defendants placed in her and the removing defendants manufactured and marketed. None of the defendants can say that they "hav[e] no real connection with the controversy." *Id.* (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). Thus, even if the Court were to apply the doctrine, the defendants' fraudulent misjoinder claim would fail.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) Williams's motion to remand, R. 15, is **GRANTED**. This matter is **REMANDED** to the Pike Circuit Court.

(2) This matter is **STRICKEN** from the Court's active docket, and all pending motions are **DENIED** as **MOOT**.

This the 2nd day of January, 2013.

Signed By:
*Amul R. Thapar* AT
United States District Judge

13